**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **SHMUEL HERZFELD,** | |
| **Plaintiff.** | |
| **v.** | **Case No.  1:24-cv-1272-(TJK)** |
| | |
| **HAZAMI BARMADA, et al.** | |
| | |
| **Defendants.** | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS**
**<u>PLAINTIFF'S FIRST AMENDED COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...........................................................................................v

INTRODUCTION ........................................................................................................1

SUMMARY OF ARGUMENT ....................................................................................2

BACKGROUND AND FACTS ...................................................................................6

I.  Antiwar Protests Including Sound Devices Begin at the Israeli Embassy ......................6

II. Plaintiff Appears at the Embassy to Counter-Protest in Favor of Israel ........................7

III. The Crowd Drowns Out Plaintiff's Pro-Israeli Video .....................................................7

IV. Organizing and Undertaking a Protest on a Public Issue of Debate Is Lawful and
Constitutionally Protected...........................................................................................8

STANDARD OF REVIEW .........................................................................................9

ARGUMENT ............................................................................................................10

I.  THERE IS NO DIVERSITY AS THE AMOUNT IN CONTROVERSY IS NOT
SUFFICIENTLY ALLEGED OR SATISFIED ....................................................10

a.  Plaintiff's De Minimis Damages Are Insufficient to Reach the $75,000 Threshold for
Diversity Jurisdiction ...........................................................................................11

b. Plaintiff Has Not Alleged Any Injury Worth $75,000......................................................11

c. Exposure to Sound As Alleged Was One Instance Not Above Levels Common in Everyday
Life.............................................................................................................................12

d. Comparison to Verdicts Shows Plaintiff's Allegations Do Not Approach $75,000.........12

e. Speculative Future Injury Is Not Compensable Under Law ..............................................13

f. Plaintiff Has No Colorable Punitive Damages Claim .......................................................13

II. THERE CAN BE NO CLAIM FOR BATTERY WITHOUT A PHYSICAL TOUCHING,
NOR FOR ASSAULT WITHOUT A THREAT OF PHYSICAL TOUCHING .................15

a. A Federal court Has Rejected Battery by Intangible Means Under District of Columbia
Law ..........................................................................................................................16

b. The Court Should Not Expand the Law To Include Battery Without Bodily Contact......17

c. Even Jurisdictions That Have Found Intangible Battery In Narrow Circumstances Would Not Allow Battery in This Case Without Defendants Having Exclusive Control of the Offensive Instruments.............................................................................................................................18

d. The D.C. Circuit Previously Limited a Case Based on Virginia Law With Indirect Touching Due to a Lack of Exclusive Control..........................................................................................19

III. PLAINTIFF FAILS TO ALLEGE EMOTIONAL DISTRESS, INTENT, OR OUTRAGEOUS CONDUCT, WITHOUT ANY OF WHICH HIS CLAIM FOR OUTRAGE FAILS .............................................................................................................20

a.  A Conclusory Statement of Emotional Distress Is Insufficient ........................................20

b. Plaintiff Pleads Himself Out of an Outrage Claim, Asserting Repeatedly that Defendants Made Noise to Drown Him Out, Not To Inflict Emotional Distress.................. 21

c. There Was No Outrageous Conduct As a Matter of Law According to the Standards Set Forth in the District...........................................................................................................................21

d. Even Directing Sound Amplification Devices Toward a Person at His Business and Home Over Several Weeks Was Insufficient as a Matter of Law ..........................................21

e. The Supreme Court Has Ruled that IIED Claims Are Barred By the First Amendment When Expressive Conduct Is Implicated ..........................................................................................23

IV. THE FIRST AMENDMENT REQUIRES DISMISSAL OF THIS LAWSUIT .............24

a. Protesting on Issues of Public Interest is Lawful and Constitutionally Protected .............24

b. The First Amendment Has Long Protected Sound Amplification Devices.......................24

c. Imposing Civil Liability for Protesting Loudly Violates the First Amendment ...............25

d. Exceptions Previously Cited by Plaintiff Involved Actual Violence, Not Just Noise .......25

V. THE AMENDED COMPLAINT FAILS TO ALLEGE A CRIME AND FAILS TO ALLEGE ACTIONABLE ANIMOSITY UNDER THE BCRA ...........................................................26

a. Plaintiff Failed to Allege a Crime, Either Under Assault, Battery, or a D.C. Noise Disturbance ............................................................................................................................26

b. The Noise Regulations Contain a First Amendment Exception ........................................26

c. A Peaceful Protest Against the Ongoing War Is Not Evidence of Racial, Religious, or

Political Bias ............................................................................................................27

VI. THE CIVIL CONSPIRACY COUNT IS FACTUALLY AND LEGALLY INSUFFICIENT FOR MULTIPLE REASONS, ANY ONE OF WHICH PRECLUDES THE COUNT ........28

a.  Plaintiff Pleads Himself Out of Civil Conspiracy .............................................28

b. There Are No Allegations That Ms. Rokhvand Did Anything During the Incident, Let Alone Join an Unlawful Conspiracy ...........................................................29

c. Other Independent Grounds Preclude a Conspiracy Count ................................29

d. Allowing a Conspiracy Count for Organizing and Undertaking a Protest As Alleged Would Have Adverse Implications for the Rights of All Americans ................................................30

CONCLUSION...........................................................................................................31

REQUEST FOR ORAL ARGUMENT ........................................................................31

CERTIFICATE OF SERVICE ....................................................................................32

# TABLE OF AUTHORITIES

## STATUTES, RULES ORDINANCES:

20 D.C.M.R. § 2799.1 ................................................................................26

28 U.S.C. § 1332 .......................................................................................10

D.C. Code § 16-5502 ................................................................................10

D.C. Code § 22-3704 ................................................................................26

Fed. R. Civ. P. 12(b)(1) ..........................................................................1, 9

Fed. R. Civ. P. 12(b)(6) ..........................................................................1, 9

## CASES:

Aboye v. United States, 121 A.3d 1245 (D.C. 2015) ...............................26

Adams v. Lufthansa German Airlines, 33 Va. App. 463 (Va. App. 2000) ...........................19

Arias v. DynCorp, 2016 U.S. Dist. LEXIS 151596 (D.D.C. 2016).......................................15

Arpaio v. Obama, 797 F.3d 11 (D.C. Cir. 2015) .......................................9

Ashcroft v. Iqbal, 556 U.S. 662 (2009).......................................9, 10, 20

Bell Atlantic Co. v. Twombly, 550 U.S. 544 (2007) ...............................9, 10

Carter v. Maryland, 2012 U.S. Dist. LEXIS 171226 (D. Md. 2012)......................................18

Chatman v. Lawlor, 831 A.2d 395 (D.C. 2003) ........................................14

Clark v. Associated Retail Credit Men, 105 F.2d 62 (D.C. Cir. 1939).................................21

District of Columbia v. Proud Boys Int'l, LLC, 2023 U.S. Dist. LEXIS 57433 (D.D.C. 2023) ..........................................................................................29

EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621 (D.C. Cir. 1997) .......................10

Eichenwald v. Rivello, 318 F. Supp. 3d 766 (D. Md. 2018) .................................18

Evans-Redi v. District of Columbia, 930 A.2d 930 (D.C. 2007)..........................................16

Feldman v. FDIC, 879 F.3d 347 (D.C. Cir. 2018)......................................9

Gustave-Schmidt v. Chao, 226 F. Supp. 2d 191 (D.D.C. 2002)............................................10

Hendricks v. S. Bell Tel. & Tel. Co., 387 S.E.2d 593 (Ga. Ct. App. 1989) .........................18

Irwin v. Arrendale, 159 S.E.2d 719 (Ga. Ct. App. 1967) .....................................18-19

Jackson v. District of Columbia, 412 A.2d 948 (D.C. 1980)................................................17

Kahal v. J.W. Wilson & Assocs., Inc., 673 F.2d 547 (D.C. Cir. 1982)...............................14

Kalantar v. Lufthanda German Airlines, 402 F. Supp. 2d 130 (D.D.C. 2005)....................19-20

Kurd v. Republic of Turkey, 374 F. Supp. 3d 37 (D.D.C. 2019) ..........................................30

Madden v. D.C. Transit Sys., Inc., 307 A.2d 756 (D.C. 1973) ...........................................16

Magliore v. Brooks, 844 F. Supp. 2d 38 (D.D.C. 2012).......................................................17

Mitchell v. E Sav. Bank, 2012 U.S. Dist. LEXIS 198811 (D.D.C. 2012)............................14

Muhammed v. District of Columbia, 881 F. Supp. 2d 115 (D.D.C. 2012) .........................21

NAACP v. Claiborne Hardware Co., 458 U.S. 886 (1982) .......................................25, 27-28

Ofisi v. BNP Paribas, S.A., 77 F.4th 667 (D.C. Cir. 2023) ................................................28

Ortberg v. Goldman Sachs, 64 A.3d 158 (D.C. 2013).................................................1-3, 6, 21-22

Pietsch v. McKissack & McKissack, 677 F. Supp. 2d 325 (D.D.C. 2010) .........................22

Rosenboro v. Kim, 994 F.2d 13 (D.C. Cir. 1993)............................................................10-11

Rossman v. Leader, 2013 U.S. Dist. LEXIS 171764 (D.D.C. 2013)...................................16, 18

Saia v. New York, 334 U.S. 558 (1948) .............................................................2, 4, 24, 29

Shuguang Chen v. ICS Protective Servs., 2024 U.S. Dist. LEXIS 159936 (D.D.C. 2024)...20

Smith v. Trump, 2023 U.S. Dist. LEXIS 13602 (D.D.C. 2023)..........................................28

Snyder v. Phelps, 562 U.S. 443 (2011)..............................................................................6, 23

Szymkowicz v. Frisch, 2020 U.S. Dist. LEXIS 136537 (D.D.C. 2020)...............................11

United States v. Grace, 461 U.S. 171 (1983)......................................................................24

United States v. Madigar, 46 M.J. 802 (C.G. Ct. Crim. App. 1997) ..................................18-19

United States v. O'Brien, 391 U.S. 367 (1968) ..................................................................25

Warren v. CIA, 210 F. Supp. 2d 19 (D.D.C. 2016) ...........................................................10

Williams v. District of Columbia, 530 F. Supp. 2d 119 (D.D.C. 2008) .............................13

Wisconsin v. Mitchell, 508 U.S. 476 (1993) ......................................................................25

**INTRODUCTION**

Defendants file this memorandum in support of their Motion to Dismiss Plaintiff's First Amended Complaint (the "Amended Complaint") under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

Plaintiff alleges that he went to the Israeli Embassy, where he observed pro-Palestinian protestors with flags, signs, and sound amplifying equipment emitting high noise along a block. Am. Compl. ¶2. Rather than walking around the corner or across the street, Plaintiff inserted himself into the area of the pro-Palestinian protest to pray for Israelis hostages and soldiers, and then started recording his pro-Israeli counterprotest. Am. Compl. ¶1, 12. Plaintiff alleges that when he began recording his video, the noise and sirens intensified to drown him out, lasting "several minutes." Am. Compl. ¶¶12, 17.

These facts are not the basis for a lawsuit, for multiple independent reasons. You cannot insert yourself into a noisy crowd of protestors that are using sound amplification devices, then pray for soldiers that the protestors are effectively protesting against, then record yourself, and then complain that the protestors already using sound amplification devices are drowning out your video. There is no precedent in the District of Columbia for suing protestors because they directed sounds toward someone who shows up at their protest to support an opposing view, nor can there be without trampling on the First Amendment.

On the merits, there was no pushing, shoving, or touching alleged -- no physical contact or threatened physical contact to support an assault or battery claim under District of Columbia law. The alleged use of sound amplification was ongoing before Plaintiff arrived and much less serious than another case where protestors sought out a plaintiff at his home and office, which the D.C. Court of Appeals found inadequate as a matter of law for an "outrage" claim. See <u>Ortberg v.</u>

Goldman Sachs, 64 A.3d 158, 161-3 (D.C. 2013). Plaintiff cannot plausibly bring a hate crime lawsuit because pro-Palestinian protestors expressed different views than he holds regarding the conflict in Gaza, an issue of public debate and dispute, and tried to drown out his video. The Supreme Court has long affirmed that political protests including sound amplification devices are protected under the First Amendment, barring this suit. Saia v. New York, 334 U.S. 558 (1948).

Additionally, Plaintiff fails to allege more than de minimis damages, and accordingly cannot reach the amount in controversy required for diversity jurisdiction. This Court has no subject matter jurisdiction over this case, and if it did, Plaintiff failed to allege a single viable cause of action for Defendants' lawful protest. This case should be dismissed with prejudice.

Given the substantial prior briefing, Defendants address proactively in this memorandum some of the arguments raised by Plaintiff in prior filings.

## SUMMARY OF ARGUMENT

### Assault and Battery, Counts I and II

In the District of Columbia, an unlawful touching constitutes battery, and a threatened unlawful touching constitutes assault. Plaintiff does not allege any pushing, shoving, touching or any other bodily contact or threatened bodily contact. There was none. There is no assault and no battery for "sound" in the District of Columbia. Plaintiff's allegations are that the protestors were trying to "drown him out." Am. Compl. ¶¶12, 13. This is not assault nor battery. By Plaintiff's own facts, protestors were simply trying to drown out his video made in their midst, not physically assault him.

### Outrage – Count III

Plaintiff's "outrage" or intentional infliction of emotional distress claim lacks essential elements: severe emotional distress, intent, and outrageous behavior. The District of Columbia

Court of Appeals has applied strict standards to this tort. Plaintiff has not claimed he had to seek any psychiatric treatment, nor has he even claimed any physical symptoms caused by emotional distress, as required for this tort. Further, Plaintiff has not pled outrageous behavior under District of Columbia law. The behavior he complains of is being loud in a protest using sound amplification devices for "several minutes." Political protests, especially when opposing protestors show up, by their nature are noisy environments known for a spirited engagement in speech. Even when, in another case, protestors with sound amplification devices went out of their way to visit a plaintiff's home and office multiple times over several weeks, the D.C. Court of Appeals ruled they did not engage in outrageous conduct as a matter of law. Ortberg, supra, 64 A.3d at 161-3. Targeting persons with amplified sound to drown them out was something Plaintiff himself did and boasted about, when he went to a rally and "blasted" a musical instrument to drive the other side away. See Herzfeld, Shmuel, Why I Blew My Shofar at a Nazi March, Jewish Journal, August 12, 2018, Exhibit A. Protesting and counterprotesting with loud noise is part and parcel of First Amendment speech, not a basis for a lawsuit.

> The BCRA Claim

Plaintiff's claim under the District of Columbia Bias-Related Crimes Act ("BCRA"), lacks the allegation of actionable animus, and lacks the allegation of a crime. Protesting for a cause on public streets is not a bias-related crime, even if the protest gets loud and is directed to those with opposing views. The Amended Complaint lacks any fact that indicates animus. There were no alleged insults or slurs, no grabbing of Plaintiff's personal items or the items of anyone in his party, or any indication of animus against Plaintiff's religion, ethnic background or political affiliation. The pro-Palestinian protestors were already present with flags and signs and using noise amplification devices emitting high sounds when Plaintiff arrived. Am. Compl. ¶2. That the

Plaintiff and Defendants advocate different positions in a conflict overseas and make their views known in noisy fashion is not a basis for a BCRA claim. Plaintiff was praying for Israeli soldiers and blames Hamas for the death of thousands of innocent Gazans. Am. Compl. ¶1. The two sides disagree vehemently on a matter of public interest and debate. Plaintiff's video was allegedly drowned out because he inserted himself among protestors advocating for Palestinians, then wanted to make a video, to advocate in support of Israel. There is no allegation the protestors made any reference to his religion, ethnic group, or political affiliation. Defendant Ms. Rokhvand was not even there at the time.

Civil Conspiracy

Plaintiff's civil conspiracy count also fails to state a claim. An agreement to protest the Israeli government's war in Gaza and killing of thousands of civilians does not entail liability for civil conspiracy. The Amended Complaint specifically alleges that the two Defendants had an "understanding, agreement, or common scheme regarding the conduct and activities of the Protestors," including "noise demonstrations, speaking into megaphones, a sound system, and noise machines. Am. Compl. ¶¶46, 47. That is not an actionable conspiracy but an agreement to engage in a lawful protest. Sound amplification devices are "indispensable instruments" of free speech under longstanding U.S. Supreme Court precedent. Saia, supra, 334 U.S. at 561. Ms. Rokhvand was not present at the protest, and neither Defendant had forewarning that Plaintiff would visit, insert himself into the area where they were protesting, and start making a video; so it is not only implausible but impossible for Defendants to have planned to assault and batter Plaintiff.

Subject Matter Jurisdiction.

Defendants have addressed the merits, but preliminarily, Plaintiff does not plead sufficient

4

facts to satisfy diversity jurisdiction. Plaintiff cannot meet the amount in controversy requirement of $75,000 by pleading only *de minimis* damages. As a matter of law, one visit to a doctor's office does not reach the amount in controversy.

In Superior Court, Defendants could bring an anti-SLAAP motion to protect their advocacy rights, and seek early dismissal on that basis alone, prior to addressing any other issues. Plaintiff strategically filed in federal court despite this Court lacking subject matter jurisdiction.

Allowing This Case to Proceed Would Chill First Amendment Rights.

Plaintiff's complaint has an inadequate foundation, in that it lacks the most basic elements of the claims asserted, and in that it flies in the face of tort law in the cases of assault, battery, and outrage. There was no violence, no physical assault, no pushing, shoving or even touching of Plaintiff. If loud protests directed to counter-protestors were the basis for tort claims, then the local and federal courts in the District, where protests are frequent, will face an excess of claims based on alleged ear "discomfort" in the aftermath of most protests. Plaintiff may express his displeasure online, in the media, and in person as a counterprotestor – all of which he has already done. He could have easily recorded his video across the street, around the corner, or even gone into the Embassy, which he eventually did. He is not permitted, however, to inject himself into a protest, complain about the noise, and file a complaint that would serve to punish his political opponents. The Amended Complaint should be dismissed with prejudice.

Political protest, even outrageous speech and conduct, and even including the use of sound amplification devices, is protected under the First Amendment. Political protest is messy and may be offensive but is a hallmark of our constitutional rights. The U.S. Supreme Court itself struck a multi-million dollar verdict for offensive, outrageous behavior, constituting intentional inflection of emotional distress, because the First Amendment provided an absolute bar against such civil

claims. <u>Snyder v. Phelps</u>, 562 U.S. 443 (2011). Plaintiff's claim is even less valid than the claim in <u>Ortberg</u>, in which the court dismissed the case despite protestors seeking out the plaintiff on multiple occasions at work and home; here the Plaintiff sought out the protestors. <u>Ortberg</u>, 64 A.3d at 163.

The driving force of this case is not any legitimate injury of Plaintiff, but the desire to punish and silence Defendants for views with which Plaintiff vehemently disagrees.

## <u>BACKGROUND AND FACTS</u>

### I.   <u>Antiwar Protests Including Sound Devices Begin at the Israeli Embassy</u>

Since at least October 17, 2023, protests over civilian casualties associated with Gaza have taken place outside the Israeli Embassy. On February 25, 2024, U.S. serviceman Aaron Bushnell set himself on fire at the Embassy to protest the war in Gaza, and since then, groups of protestors have camped out on public sidewalks near the Embassy 24 hours a day. <u>See</u> Exhibit B, Lauren Markoe, <u>'Until a Ceasefire': Nonstop Protest Rocks the Israeli Embassy – and the Neighborhood Beyond</u>, in Forward Magazine, March 27, 2024. Defendants and others have been protesting the Israeli government's actions in Gaza, which have killed thousands of civilians (<u>see</u> Am. Compl. ¶1) and driven over one million people from their homes. Megaphones, sirens, and earplugs have all been part of the protest, under the watchful eyes of the Secret Service and police. <u>See</u> Exhibit B. Where the law has been violated, authorities have intervened and arrested people. For example, Secret Service police arrested a pro-Israeli protestor for assaulting a pro-Palestinian protestor and destroying equipment. <u>See</u> Exhibit C, Ron Kampeas, <u>Son of Prominent DC-Area Rabbi Arrested for Allegedly Shoving Anti-Israel Protestors</u>, in The Times of Israel, April 19, 2024.

### II.   <u>Plaintiff Appears at the Embassy to Counter-Protest in Favor of Israel</u>

In this context, Plaintiff alleges that he and a small group, including at least two of his

attorneys and a cameraperson, attended the ongoing protest with the goal of recording a pro-Israeli counter-protest video of Plaintiff praying for Israeli soldiers and hostages among the pro-Palestinian protestors. <u>See</u> Am. Compl. ¶¶11-12. The antiwar group of pro-Palestinian protestors was "stretched along the entire city block" with flags, signs, and noise amplification equipment in use. <u>Id.</u> at ¶ 11. Plaintiff does not allege that Ms. Rokhvand was among the antiwar protestors present at the protest, or took any actions related to Plaintiff's *de minimis* injury. Plaintiff cannot make those allegations, as Ms. Rokhvand was not present at the incident. This was also a media opportunity for Plaintiff, who wished to record a video. <u>See</u> Am. Compl. ¶12. Plaintiff could have walked around the side, or even entered the Embassy grounds, as he later did, but he chose to plant himself among the protestors.

### III.    <u>The Crowd Drowns Out Plaintiff's Pro-Israeli Video</u>

The Amended Complaint alleges that when Plaintiff began recording his video amidst the pro-Palestinian protestors with their sound amplification equipment and noise, the antiwar protestors increased the noise with sirens to "drown out" the video. Am. Compl. ¶12. Plaintiff posted footage on social media later that day and appeared on media outlets using the footage to promote himself. The "drowning out" was apparently ineffective, as Plaintiff is readily audible in the videos he made and posted on social media and on Fox News' website. <u>See</u> Exhibit D, Videos at https://bit.ly/4dsJ9yr.[1] In those videos, he is not in any pain or apparently suffering from "acoustic trauma," and is instead railing against the antiwar protestors, calling them "wicked people" that "we defeated" and "will defeat again." <u>See</u> <u>id.</u> Plaintiff's attitude and words betray his true aim – to shut down the protestors he considers, people whom he seeks to "defeat."

---

[1] Permanent link available at:
https://www.dropbox.com/scl/fo/anvhqvxbrfnadzq7ijin6/AAFKxDm9HHFHvdFD93nzBZk?rlkey=h4flf2ir3g950cc
vgxqgljypc&st=5hfytben&dl=0

However, the protestors are not "wicked" enemies of Plaintiff to be defeated, they are American citizens with a right to protest the ongoing war in Gaza on public streets and sidewalks around the Israeli embassy.

**IV.    Organizing and Undertaking a Protest on a Public Issue of Debate Is Lawful and Constitutionally Protected**

Plaintiff's march of his pro-Israeli group into the area of pro-Palestinian protestors lasted only a short time, apparently "several minutes." See Am. Compl. ¶17. The increased sound started only when he started to record himself in a video showing protestors in the background. Am. Compl. ¶13. Plaintiff alleged that the noise at the event hurt his ears, and that he later consulted an ear, nose, and throat doctor. Am. Compl. ¶24. Plaintiff alleged that the pain receded by the next week with only lingering "discomfort." Am. Compl. ¶25. Plaintiff has not alleged any actual permanent injury, merely a potential increased risk of future injury. Am. Compl. ¶26. Plaintiff has also alleged no emotional distress beyond a single conclusory paragraph. See Am. Compl. ¶37. Despite no permanent injury, Plaintiff has summarily alleged $75,000 in damages attempting to obtain diversity jurisdiction. Am. Compl. ¶8. Plaintiff's one-time, limited exposure to noise at a level present in everyday occurrences such as motorcycles and music concerts could not lead to damages of $75,000.

What Plaintiff has described is completely lawful protest protected by the First Amendment. He went to a protest where sound amplification devices were in use and recorded himself in such a manner as to show the protestors in the background. The most reasonable inference is that Plaintiff did not go around the corner or into the Embassy to pray because he wanted to show himself among the protestors. As a media strategy, this may have been an effective way to advocate for his views. But the judicial system is made to redress actual harms, not to get revenge on political opponents. Plaintiff's paper-thin claims collapse under the weight of any

scrutiny.

Plaintiff does not allege that Defendants touched his person. Plaintiff does not allege he was touched by any projectiles. Plaintiff does not allege that the many Israeli flags placed in the area were removed or vandalized. Plaintiff merely alleges that the pro-Palestinian protestors were too loud and directing their sound toward him, when he was there to pray for the soldiers whom they were effectively protesting against.

Organizing a protest -- even a noisy protest using sound amplification devices -- of Israeli military actions in Gaza that have resulted in the death of thousands, is not grounds for a tort; it is a protected exercise of the First Amendment.

## **STANDARD OF REVIEW**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), Plaintiff "bears the burden of invoking the court's subject matter jurisdiction." Arpaio v. Obama, 797 F.3d 11, 19 (D.C. Cir. 2015). The Court must accept as true factual allegations in the complaint, but when defendants dispute the factual basis of the court's subject matter jurisdiction, "the court must go beyond the pleadings and resolve" any dispute necessary to the disposition of the motion to dismiss. Feldman v. FDIC, 879 F.3d 347, 351 (D.C. Cir. 2018). This includes consideration of evidentiary material in the record. Id. at 351. Plaintiff does not meet the $75,000 threshold under this standard as he merely had limited exposure to sound at a level that commonly occurs.

As to the merits, Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal of the Amended Complaint for failure to state a claim upon which relief can be granted. When deciding a motion to dismiss under Rule 12(b)(6), a court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Co v. Twombly, 550

U.S. 544, 570 (2007)). <u>Iqbal</u> and <u>Twombly</u> tightened the notice pleading standard, adding a plausibility requirement. A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u>

In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint and matters about which the Court may take judicial notice," such as news reports. <u>Gustave-Schmidt v. Chao</u>, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citing <u>EEOC v. St. Francis Xavier Parochial Sch.</u>, 117 F.3d 621, 624-25 (D.C. Cir. 1997)); <u>see also</u> <u>Warren v. CIA</u>, 210 F. Supp. 2d 19 (D.D.C. 2016) (judicial notice of news reports).

## <u>ARGUMENT</u>

### I. THERE IS NO DIVERSITY AS THE REQUIRED AMOUNT IN <u>CONTROVERSY IS NOT SUFFICIENTLY ALLEGED OR SATISFIED</u>

#### A. Plaintiff's De Minimis Damages Are Insufficient to Reach the $75,000 <u>Threshold for Diversity Jurisdiction</u>

This Court has no federal subject matter jurisdiction over general tort claims or claims based on D.C. statute, and there can be no diversity jurisdiction when the amount in controversy is less than $75,000. 28 U.S.C. § 1332. The Plaintiff bears the burden of establishing the amount of controversy when it has been put into question. <u>Rosenboro v. Kim</u>, 994 F.2d 13, 17 (D.C. Cir. 1993). Despite no federal claims and an amount in controversy less than $75,000, Plaintiff has brought this case in federal court, apparently to avoid the District's anti-SLAPP statute, which grants Defendants a special right to dismiss when one side of a public debate files a lawsuit to punish the expression of opposing points of view. <u>See</u> D.C. Code § 16-5502. Plaintiff, a pro-Israeli protestor, seeks to punish Defendants for their antiwar protest and has not alleged damages of

$75,000 or more. Without meeting the $75,000 threshold, this Court has no jurisdiction over this entirely state claim and the case should be dismissed.

### B.  **Plaintiff Has Not Alleged Any Injury Worth $75,000**

The Amended Complaint alleges no permanent injury, merely passing ear pain that lasted no longer than a few days. Am. Compl. ¶25. Per the videos of the incident, Plaintiff is admonishing the crowd for their protest as "wicked" and falsely claiming protestors were supporting Hamas. Am. Compl. ¶14; see Exhibit D. Plaintiff is in no apparent pain in the videos and chooses to stay despite the noise to repeat his speech **multiple times** to castigate those whom he calls the "pro-Hamas" people. Id.

Even on the face of the Amended Complaint, Plaintiff cannot meet the burden of proving damages of $75,000 or more, and there is thus no diversity jurisdiction. A bare bones assertion of jurisdictional sufficiency – which is all there is here, Am. Compl. ¶8 – is not enough to carry Plaintiff's burden. Szymkowicz v. Frisch, 2020 U.S. Dist. LEXIS 136537, *18-19 (D.D.C. 2020).

As a matter of law, one visit to the doctor's office is not sufficient to show damages of $75,000. See Rosenboro, 994 F.2d at 17. In Rosenboro, plaintiff Dorothy Rosenboro sought to prove that she met the jurisdictional requirement at the time – $50,000 – after injuries in a car crash. Id. at 16. Ms. Rosenboro testified that after the car accident she "was diagnosed with acute cervical and lumbar sprains. Six months later, her physician concluded that her cervical sprain was resolved, but that her lumbar sprain persisted." Id. at 15. The liquidated damages in that case were $2,880 for diagnostic tests, and the D.C. Circuit held that it would not presume unliquidated damages for the remaining $47,120. Id. at 16, 18. Here, the jurisdictional threshold has increased to $75,000, and Plaintiff 's damages allegations are less than Ms. Rosenboro, merely alleging pain lasting less than a week. This Court cannot presume unliquidated damages to account for the

11

difference between $75,000 and Plaintiff's single visit to a doctor's office.

### C. Exposure to Sound as Alleged Was One Instance Not Above Levels Common in Everyday Life

Plaintiff's allegation of injury lacks credibility, even for a few minutes at the 95-100 decibels alleged. Commonly available medical charts of decibel levels show that many everyday events are at the same level, or higher, than those alleged by Plaintiff. Live rock music is listed at 110 decibels; a motorcycle and garbage truck are at 106 decibels. See Exhibit E, Noise Sources and Their Effects, Published by Temple University and Federal Interagency Committee on Noise. Other similar charts confirm that a lawn mower is 107 decibels, nightclubs and sporting events are 110 decibels; all levels more than those alleged here. See additional charts at Exhibit E. People happily engage in these activities for hours at a time. Plaintiff alleges he faced this noise at this level "for several minutes." Am. Compl. ¶17. Plaintiff himself has conceded in briefing that the level alleged is not more than the level found in everyday activities such as attending a rock concert or riding a motorcycle. Plaintiff's Oppo. p. 7-8, ECF 11. It defies logic that a single exposure of only a few minutes would substantiate damages of more than $75,000.

### D. Comparison to Verdicts Shows Plaintiff's Allegations Do Not Approach $75,000

In previous briefing, Plaintiff compares his allegations, which are ear pain lasting less than a week and one call to a doctor, to hit and run cases with broken bones. See Am. Compl. ¶25, Plaintiff's Oppo., p. 7, https://www.dccourts.gov/services/civil-matters/jury-verdicts, ECF 11. Instead of requiring multiple hospital visits or surgery, Plaintiff's allegations consist of minor pain and no lasting injuries. Therefore, the verdicts comparable to Plaintiff's injuries are much lower, and cannot account for the amount in controversy requirement.

In verdicts for auto collisions, one jury awarded $25,000 for **permanent injury**, while another jury awarded forty dollars to a plaintiff who suffered no permanent injury, merely soft

tissue damage. See id. Here, Plaintiff's allegations of "discomfort" and no permanent injury are closer to the soft tissue damage of forty dollars than a permanent injury justifying $25,000. Plaintiff's compensatory damages do not meet the amount in controversy.

### E.  Speculative Future Injury Is Not Compensable Under Law

Plaintiff is limited to only those injuries that have actually occurred, not vague and speculative future injuries that may occur in the future. Claims that Plaintiff is at an increased risk of developing hearing damage are remote and speculative, dependent on him developing hearing issues in the future. When damages depend on the development of a future injury, even when the increased risk to health is likely (such as cigarette smoke), such damages are too remote and speculative to be the basis of damages. Williams v. District of Columbia, 530 F. Supp. 2d 119, 126-27 (D.D.C. 2008) (holding that exposure to cigarette smoke may be an increased risk to plaintiff's health but is still "too remote and speculative" to support damages). Plaintiff's exposure to several minutes in a loud environment is, at best, like exposure to secondhand smoke in that it cannot be the basis for damages based on a speculative future injury. Plaintiff himself has admittedly blasted his own musical instrument at a protest, and likely experienced loud noises in other contexts in Washington D.C. and elsewhere.

### F.  Plaintiff Has No Colorable Punitive Damages Claim

In previous briefing, Plaintiff tacitly concedes that his claims alone do not reach the jurisdictional threshold required for subject matter jurisdiction and erroneously asks the Court to consider punitive damages. See Plaintiff's Oppo. p. 6, ECF 11 (asking the Court to presume that the compensatory damages are $20,000). However, punitive damages are inappropriate in this case to make up the difference between what Plaintiff has pled and $75,000.

Plaintiff's reliance on punitive damages should be closely scrutinized by the Court. "In applying the legal certainty test where the availability of punitive damages is the *sine qua non* of federal jurisdiction the District Court should scrutinize the punitive damage claim to ensure that it has at least a colorable basis in law and fact…**Liberal pleading rules are not a license for plaintiffs to shoehorn essentially local actions into federal court through extravagant or invalid punitive damage claims**." Kahal v. J.W. Wilson & Assocs., Inc., 673 F.2d 547, 549 (D.C. Cir. 1982) (emphasis added).

Punitive damages are "inherently speculative" and defendants "must prove by a preponderance of the evidence that the threshold is satisfied." Mitchell v. E Sav. Bank, 2012 U.S. Dist. LEXIS 198811 *5 (D.D.C 2012). They may only be awarded through "clear and convincing evidence that the tort committed by the defendant was aggravated by egregious conduct and a state of mind that justifies punitive damages." Chatman v. Lawlor, 831 A.2d 395, 400 (D.C. 2003).

Plaintiff has not pled any behavior nor any required state of mind on behalf of the Defendants meriting punitive damages. Plaintiff alleged that Ms. Barmada merely participated as part of a loud group of protestors and encouraged the protest to be loud. Plaintiff alleged even less against Ms. Rokhvand, who merely helped organize protests. Holding pro-Palestinian views does not mean you should be punished.

Punitive damages are even less appropriate when considering the entire circumstances and Mr. Herzfeld's own actions. Here, the Plaintiff inserted himself into a crowd of protestors, shot video of himself amidst the pro-Palestinian protestors, and complains that Ms. Barmada participated as part of the crowd to attempt to drown out the video of him "praying." The videos themselves suggest that Plaintiff's so-called "prayer" consists of railing against the protestors, saying that they were "wicked people" and that "we defeated them [before] and we will defeat

them again." Exhibit D. Plaintiff does not allege that Defendants' intent was to harm him, just that Defendants wanted to disrupt his video. Am. Compl. ¶12. Plaintiff does not allege that Defendants' conduct was egregious, just that they were protestors expressing pro-Palestinian views. It is not egregious for a protesting group that has been using sirens and megaphones for weeks to continue to use their devices because Plaintiff wants to shoot a video of himself. A protest is not Plaintiff's personal movie studio where he can call "quiet on set" and record video uninterrupted.

Plaintiff is hypocritical to insist that making noise at a protest is egregious conduct worth punitive damages, given that Plaintiff himself "blasted" his musical instrument at a rally to drown out protestors and wrote an article about his experience. Herzfeld, Shmuel, <u>Why I Blew My Shofar at a Nazi March</u>, <u>supra</u>, Exhibit A. Plaintiff alleges the use of amplified sound at a protest in this case is worthy of punitive damages but when he did it himself at a protest he considered it laudable behavior that merited authoring a magazine article. In both cases – the Defendants here and the Plaintiff in 2018 – the parties engaged in protective First Amendment activity. In verbally attacking the protestors, Plaintiff displayed his own bias, equating U.S. protestors in Washington, D.C. with Hamas terrorists merely because the protestors are pro-Palestinian.

This case was filed in federal court, not because federal court is appropriate, but because federal court avoids DC's anti-SLAPP law. Because it is a legal certainty that Mr. Herzfeld cannot recover $75,000, there is no diversity jurisdiction, and this Complaint should be dismissed.

## II.    THERE CAN BE NO CLAIM FOR BATTERY WITHOUT A PHYSICAL TOUCHING, NOR FOR ASSAULT WITHOUT A THREAT OF PHYSICAL TOUCHING

The Amended Complaint still fails to plead harmful or offensive bodily contact, and thus fails to plead battery or assault. A "battery" is "an intentional act causing harmful or offensive bodily contact." <u>Arias v. DynCorp</u>, 2016 U.S. Dist. LEXIS 151596 *23 (D.D.C. 2016) (citing

Evans-Redi v. District of Columbia, 930 A.2d 930, 937 (D.C. 2007)). Assault requires "the intentional putting another in apprehension of an immediate and harmful or offensive conduct." Madden v. D.C. Transit Sys., Inc., 307 A.2d 756, 757 (D.C. 1973). When a pro-Israeli protestor is taunted by an anti-Israeli protestor, or vice versa, the aggrieved party has not been the victim of assault and battery; he has experienced American democracy and free speech in action.

### A. A Federal Court Has Rejected Battery by Intangible Means Under District of Columbia Law

There is no case where the District of Columbia Court of Appeals has found a tort based on sound. Plaintiff asks the Court to implement a new law of assault and battery "by noise" without physical touching and without threats of physical touching. Battery by "noise" or other intangible forces is not only not the law in the District, **it has been rejected in the District**.

The single claim for battery for intangible conduct without physical touching addressed by the courts in the District was rejected. See Rossmann v. Leader, 2013 U.S. Dist. LEXIS 171764 (D.D.C. 2013). In Rossmann, the plaintiff alleged that "Defendants physically touched him, without his consent, in a harmful or offensive manner, by…Wireless signal transmissions." Id. at *1. In the same manner counsel for Plaintiff has so poetically described hearing sound as "being hit on the side of the head with a brick" in this case (Plaintiff's Oppo., p. 1, ECF 11), the plaintiff in Rossmann described the wireless transmissions as "delivery of de facto 'bullets' aimed at Plaintiff's head and brain." Id. at *2. The Court in that case was unconvinced. There were no bullets there; there is no brick here.

The Court in Rossmann held that "the complaint addresses two elements of a civil battery claim: intentional acts and harmful body contact" but "**the complaint does not appear to allege that either of the defendants actually touched [the] plaintiff**." Id. Plaintiff is in a similar position to the plaintiff in Rossmann. He has alleged (de minimis) damages but has failed to allege

Ms. Barmada actually touched him. Being a part of a loud crowd is not actionable as assault and battery, just as making wireless signal transmissions is not assault and battery.

Sounds are inherently intangible, and thus unable to make "bodily contact" with the Plaintiff. Making sounds near another person does not constitute assault and battery. Other assault and battery cases in the District confirm that physical touching, or threatened bodily contact, is required. See Jackson v. District of Columbia, 412 A.2d 948 (D.C. 1980).

### B. The Court Should Not Expand the Law to Include Battery Without Bodily Contact

Battery by sound has never been a successful theory in the District, and such an expansion without legislative action would upend centuries of common law. Battery is an intentional act causing a harmful or offensive **bodily contact**. Magliore v. Brooks, 844 F. Supp. 2d 38, 44 (D.D.C. 2012) (confirming requirement of "offensive bodily contact" for battery and threat of offensive bodily contact for assault).

Plaintiff would do away with the bodily contact requirement. If battery included "intangible" battery without contact due to sound, the courts could be flooded with cases anytime someone does not approve of a neighbor's loud music or does not like their neighbor riding a motorcycle, both of which are volume levels Plaintiff has claimed are sufficient for battery. See Plaintiff's Oppo, p. 7-8, ECF 11.

Offensive actions like catcalling, wolf whistling, or insulting someone would be battery if intangible sound could be battery. The District of Columbia does not recognize sound as a method of battery and there is no basis for the Court to expand the scope of battery. This is an especially inappropriate case to expand the tort. When Plaintiff arrived in the area, he saw the pro-Palestinian protestors with their signs, flags and sound amplification equipment in use. Am. Compl. ¶1. Rather than go across the street or around the side to pray and record video, or even inside the Embassy,

he walked into the thick of the noisy protest where sound amplification was in use. Defendants with their sound devices did not invite him or trick him into coming to the protest area, he went to them specifically so he could take a video among them.

### C. Even Jurisdictions That Have Found Intangible Battery in Narrow Circumstances Would Not Allow Battery in This Case Without Defendants Having Exclusive Control of the Offensive Instruments

Where battery by intangible means in other states is allowed, in certain cases previously cited by Plaintiff in its prior briefing, there remains a requirement that the battery be committed by someone with exclusive control of the instrument of harm, with no other person or factor intervening. If this Court seeks to override District of Columbia precedent and expand the scope of battery, contrary to the law as stated in Rossmann, it should at the minimum specify the narrow circumstances that would justify the tort and require exclusive control of the instrumentality of harm. Here, Defendants did not have such exclusive control, and the case should be dismissed.

There can be no battery without exclusive control of the instrumentality of harm, as evidenced by the caselaw previously cited by Plaintiff. In Hendricks, under Georgia law, the defendant tricked plaintiff into placing a telephone receiver on his ear and played a high frequency/high intensity tone "under the control" of defendant. Hendricks v. S. Bell Tel. & Tel. Co., 387 S.E.2d 593 (Ga. Ct. App. 1989). In Eichenwald, under Texas law, the defendant sent a flashing gif that stated "YOU DESERVE A SEIZURE FOR YOUR POSTS" which caused plaintiff to have a seizure. Eichenwald v. Rivello, 318 F. Supp. 3d 766, 769 (D. Md. 2018). In Carter, under Maryland law, defendant electrically shocked a plaintiff with a metal detecting wand. Carter v. Maryland, 2012 U.S. Dist. LEXIS 171226 *4-5 (D. Md. 2012). In Madigar and Irwin, x-ray technicians unlawfully exposed plaintiffs to x-ray radiation by taking unlawful x-ray images of their bodies without medical necessity. United States v. Madigar, 46 M.J. 802 (C.G. Ct. Crim.

App. 1997); <u>Irwin v. Arrendale</u>, 159 S.E.2d 719 (Ga. Ct. App. 1967). These are all egregious and limited circumstances, where a defendant had exclusive use off an instrumentality, and also where a plaintiff effectively had no choice.

Notably, those cases do not allow battery where defendants did not have exclusive control of the instrument of harm. There are no cases with third party participants or environmental intervention. Here, Ms. Barmada was only one of a crowd of protestors. This is the exact type of case that this limit would preclude liability, as Ms. Barmada merely participated in a noisy group, and even in Plaintiff's video, she has a megaphone but does not wield a siren. Plaintiff cannot pick out and separate the noise of Ms. Barmada from the noise of the other protestors.

### D. The D.C. Circuit Limited a Case Based on Virginia Law With Indirect Touching Due to a Lack of Exclusive Control

A Virginia case which did involve physical contact was limited by this Court on the grounds of lack of exclusive control. <u>See</u> <u>Kalantar v. Lufthansa German Airlines</u>, 402 F. Supp. 2d 130, 143 (D.D.C. 2005) (citing <u>Adams v. Lufthansa German Airlines</u>, 33 Va. App. 463, 534 (Va. App. 2000)). The Court held that the Virginia case <u>Adams</u> (which allows battery by intangible means) must be limited to "cases where an offensive instrument was under the exclusive control of the defendant, and caused the plaintiff grave physical injury." <u>Id.</u> The plaintiff in <u>Kalantar</u>, relying on <u>Adams</u>, argued that unwanted touching merely needed to be "set in motion by the defendant," when the plaintiff was touched by police officers at the request of defendant. <u>Id.</u> A third party acting at defendant's request was not sufficient. This Court held that "[t]o achieve coherence, though, this claim depends upon the incredible proposition that the police officers were acting not just at defendants' request, but under their exclusive control." <u>Id.</u> The Court rejected the "incredible proposition." <u>Id.</u>

Here, unlike in <u>Kalantar</u>, there was no touching. Further, the "contact by sound" was not

actual contact, but only sound waves, and occurred through third parties. Plaintiff's allegation that Ms. Barmada requested the crowd to make noise is not sufficient, as the Court made clear in <u>Kalantar</u> that a request is not sufficient to attribute liability. The Court in <u>Kalantar</u> would deem it an "incredible proposition" that the protestors were acting under Ms. Barmada's exclusive control and not upon her request and therefore would reject Plaintiff's claim. There is no battery because there is no physical contact. Should the Court change the law and rule that sound is a means to make physical contact under limited circumstances, the Court should still hold there is no battery because Ms. Barmada did not have exclusive control of the offensive instruments.

### III.  PLAINTIFF FAILS TO ALLEGE EMOTIONAL DISTRESS, INTENT, OR OUTRAGEOUS CONDUCT, WITHOUT ANY OF WHICH HIS CLAIM FOR <u>OUTRAGE FAILS</u>

#### A.  <u>A Conclusory Statement of Emotional Distress Is Insufficient</u>

Despite amending the Complaint, the only emotional distress alleged is a single conclusory paragraph. <u>See</u> Am. Compl. ¶37. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. 662, 678 (2009). An "outrage" or intentional infliction of emotional distress claim requires severe emotional distress "more than general distress, embarrassment, and unhappiness." <u>Shuguang Chen v. ICS Protective Servs.</u>, 2024 U.S. Dist. LEXIS 159936 *11 (D.D.C. 2024). Allegations of "fear…emotional distress…fatigue, headaches, irritated eyes, and sensitivity to light" based on emotional distress are not sufficient to support an intentional infliction of emotional distress ("IIED") claim. <u>Id.</u> Here, we have even less, just a naked assertion that Plaintiff suffered emotional distress. <u>See</u> Am. Compl. ¶37. Without pleading severe emotional distress, Plaintiff cannot plead an outrage claim and the claim should be dismissed.

**B. Plaintiff Pleads Himself Out of an Outrage Claim, Asserting Repeatedly that Defendants Made Noise To Drown Him Out, Not To Inflict Emotional Distress**

Plaintiff pleads himself out of an "outrage" claim by the language of his own Complaint. Plaintiff reiterates at several points that Defendants used their noise devices to "drown out" the Plaintiff. Am. Comp. ¶¶12, 17. There was no alleged intention to inflict emotional distress on the Plaintiff personally. There is no evidence that any Defendant or protestor knew the Plaintiff. Even in the language of Count III, Plaintiff alleges that the "sole" purpose of the pro-Palestinian protestors was to interfere with his "prayers." Am. Compl. ¶36. On this basis alone, the outrage claim fails because it requires the intent to "purposely [cause] a disturbance of another's mental or emotional tranquility of so acute a nature that harmful physical consequences might be not unlikely to result." Clark v. Associated Retail Credit Men, 105 F.2d 62, 65 (D.C. Cir. 1939).

**C. There Was No Outrageous Conduct As a Matter of Law According to the Standards Set Forth in the District**

The Amended Complaint not only lacks emotional distress and intent, it lacks outrageous behavior that goes beyond all possible bunds of decency as required by District of Columbia law. Making noise at a peaceful protest is not "extreme and outrageous conduct." See Muhammed v. District of Columbia, 881 F. Supp. 2d 115, 124-135 (D.D.C. 2012) (holding that an allegedly unprovoked "violent…push" was not sufficiently outrageous to support outrage claim and holding that liability "does not extend to mere insults, indignities, threats, annoyances, petty oppressions or other trivialities"). Drowning out a pro-Israeli video at a pro-Palestinian protest is the exact type of mere insult or petty oppression that is not covered by IIED.

**D. Even Directing Sound Amplification Devices Toward a Person at His Business and Home Over Several Weeks Was Insufficient As a Matter of Law**

In Ortberg, cited by Plaintiff in previous briefing, the Court rejected as a matter of law claims regarding the use of sound amplification devices that are much more serious than that

alleged here. <u>Ortberg</u>, 64 A.3d at 161. In <u>Ortberg</u>, Mr. Paese of Goldman Sachs claimed to be the victim of bullhorns, airhorns and other noise protests perpetrated by Mr. Ortberg over a period of weeks, directed to Mr. Paese at his office and at home. <u>Id.</u> The protests, including shouting and chanting, would last thirty minutes, intrude into the lobby of Mr. Paese's office, and would include chants of "we know where you sleep at night." <u>Id.</u> Eventually, Mr. Paese sued for intentional infliction of emotional distress and sought injunctive relief. <u>Id.</u> The D.C. Court of Appeals, noting that the concept of outrageous conduct was a narrow tort subject to a strict test with high a high bar, ruled as a matter of law that there was no outrageous behavior. <u>Id.</u> at 163. That Mr. Paese suffered multiple targeted protests over several weeks, including bullhorns, airhorns and loud noise, was not sufficient. <u>Id.</u>

Several factors confirm this case is less serious than <u>Ortberg</u>. In <u>Ortberg</u>, the protestors went to Mr. Paese's business and home, repeatedly. In this case, Defendants never went to Plaintiff's home, office, or temple, and never tried to contact him. It was Plaintiff himself who saw pro-Palestinian protestors with signs and equipment, and nevertheless inserted himself into their protest. Am. Compl. ¶¶1, 2, 12. In this case, unlike <u>Ortberg</u>, there was only one incident that serves as the basis for the outrage claim. Repeated and frequent harassment is a hallmark of many claims for intentional infliction of emotional distress. <u>See</u> <u>Pietsch v. McKissack & McKissack</u>, 677 F. Supp. 2d 325, 329-330 (D.D.C. 2010). In <u>Ortberg</u>, even Mr. Paese's neighbors got involved, given that protestors went to his house. <u>Ortberg</u>, 64 A.3d at 161. In <u>Ortberg</u>, the noise amplification lasted around thirty minutes each time it was used. <u>Id.</u> Here there was only one instance of "several minutes." Am. Compl. ¶17. That the parties in <u>Ortberg</u> had no preexisting relationship was a factor the court found that favored no tort. <u>Ortberg</u>, 64 A.3d at 163. Similarly, the parties here had no preexisting relationship. Based on the standards laid down in <u>Ortberg</u>, and the much more serious

intentional harassment over several week at home and office, which still as a matter of law was insufficient for a claim of outrage, this Court must dismiss Count III.

**E.  The Supreme Court Has Ruled that IIED Claims Are Barred by the First Amendment When Expressive Conduct is Implicated**

In <u>Snyder v. Phelps</u>, 562 U.S. 443 (2011), the Supreme Court rejected an intentional infliction of emotional distress claim as a matter of law, stating that the First Amendment barred such claim even in the face of obviously offensive speech and conduct in disrupting a family's funeral for their military son using outrageous taunts and behavior. The family members had obtained a multi-million dollar verdict at trial, which the Fourth Circuit and U.S. Supreme Court overturned. <u>Id.</u> Protesting a government's actions in front of that government's embassy is if anything more clearly protected speech compared to disrupting a veteran's funeral, and yet both are protected by the First Amendment.

As an alternative argument, the family in <u>Snyder</u> tried to argue the "captive audience" doctrine, effectively saying that family members could not avoid the offensive language and conduct. The Supreme Court rejected that argument, noting that such an exception is narrow. In this case, Plaintiff walked right into the protestors and ignored his options to walk around them in either direction, or across the street, or even into the Embassy. Plaintiff could have recorded his video around the corner when he saw the protestors and their sound amplification equipment or walked away when he first experienced loud noise. But he did not, he chose to stay and pray among the pro-Palestinian protestors, capturing them in the background of his video, and thus he subjected himself to, and impliedly consented to hear, their protest.

Eventually, Plaintiff notes that he did leave the area. Am. Compl. ¶18. Plaintiff's group apparently never attempted to pray around the block, or anywhere else nearby. Before leaving, they went to the Embassy's security building, but there is no indication that they prayed there

either. If Plaintiff came to pray, there were many areas in the vicinity where there were no pro-Palestinian protestors.

## IV.    THE FIRST AMENDMENT REQUIRES DISMISSAL OF THIS LAWSUIT

### A.  Protesting on Issues of Public Interest is Lawful and Constitutionally Protected

Political protests on streets and sidewalks, including related conduct, are protected by the First Amendment. United States v. Grace, 461 U.S. 171, 176 (1983). Sidewalks are "'public places' historically associated with the free exercise of expressive activities" and are going to have noisy protests; attaching civil liability for nonviolent protesting would threaten the expressive rights guaranteed under the First Amendment. Id. at 177. In Grace, the Court struck down rules restricting activities around the Supreme Court. Id. In this case, Plaintiff alleges that pro-Palestinian protestors were outside the Embassy when he arrived, raising Palestinian flags using sound amplification devices. Am. Compl. ¶¶2, 12.

### B.  The First Amendment Has Long Protected Sound Amplification Devices

The Supreme Court has also made clear under longstanding precedent that the First Amendment protects the use of sound-amplifying devices as "indispensable instruments" of public speech. Saia, supra, 334 U.S. at 561. Protesting and using noisemakers including sound amplification is common advocacy protected by the First Amendment, and it would be especially inappropriate and unprecedented to find a tort claim where Plaintiff injected himself into the noisy protestors when he knew they were using sound amplification devices. As noted previously, Plaintiff himself went to a protest and blasted his shofar to drive protestors he disliked away, consistent with his First Amendment rights; Defendants are entitled to the same rights.

Plaintiff noted that given the protestor noise, he complained to the local police and federal law enforcement watching the protestors, and that the officers said there was nothing they could

do. Am. Compl. ¶19. Plaintiff seemed surprised, but law enforcement likely recognized that the First Amendment applies to public streets and sidewalks, including to bullhorns, megaphones and sirens. The First Amendment requires dismissal of the tort claims here.

### C.  Imposing Civil Liability for Protesting Violates the First Amendment

An expansion of tort liability and the BCRA in the context of political protests to include using sound amplification devices would run afoul of the First Amendment, as sound is inherent in expressive actions such as the alleged actions here. Claims decrying activity protected by the First Amendment "impose[] a special obligation on this Court to examine critically the basis on which liability [could be] imposed." NAACP v. Claiborne Hardware Co., 458 U.S 886, 911, 915 (1982).

### D.  Exceptions Previously Cited by Plaintiff Involved Actual Violence, Not Just Noise

In cases previously cited by Plaintiff, Wisconsin v. Mitchell, 508 U.S. 476 (1993) and United States v. O'Brien, 391 U.S. 367 (1968), as exceptions to free speech protection, speech was at most an afterthought. In Mitchell, 508 U.S. 476 (1993), a group of boys beat up another child, motivated by racial animus. Defendants tried to argue (and had apparently persuaded a lower court) that enhanced penalties based on racial animus were protected, expressive thought; that case had nothing to do with free speech. Id. There is no dispute that the First Amendment does not protect the beating of another person. If the pro-Palestinian protestors had beaten up Plaintiff, as in Mitchell, Plaintiff would have a claim. Plaintiff's own Amended Complaint confirms that the protestors were not violent, did not touch him, or destroy any property. O'Brien burned his draft registration materials, with the Supreme Court finding that the government had a compelling interest in raising an army efficiently, overriding any alleged First Amendment rights associated with burning draft registration materials.

25

## V.    THE AMENDED COMPLAINT FAILS TO ALLEGE A CRIME AND FAILS TO ALLEGE ACTIONABLE ANIMOSITY UNDER THE BCRA

Plaintiff fails to allege any crime or designated act and fails to allege actionable animosity to properly bring a claim under the BCRA, which is the District's hate crime statute.

DC Code § 22-3704(a) grants a private cause of action to "any person who incurs injury to his or her person or property as a result of an intentional act that demonstrates an accused's prejudice based on…religion, national origin…personal appearance…or political affiliation of a victim of the subject designated act." A "designated act" refers to any "criminal act recognized under D.C. law." Aboye v. United States, 121 A.3d 1245, 1250 (D.C. 2015).

### A.    Plaintiff Failed to Allege a Crime, Either Under Assault, Battery, or a D.C. Noise Disturbance

Plaintiff fails to plead a "designated act" or crime, to support a BCRA claim. For the reasons detailed above, Plaintiff has not pled battery nor assault as designated acts.

Plaintiff has also not alleged a criminal noise disturbance as a designated act as Defendants have not committed a criminal "noise disturbance." The District's sound regulations may only be violated by "noise disturbances" and thus Plaintiff must make allegations that Defendants acted in violation of the actual provisions therein and also outside of D.C.'s safe harbor.

### B.    The Noise Regulations Contain a First Amendment Exception

According to the District of Columbia Noise Control Act, "noise shall not be considered a noise disturbance if it is made during noncommercial public speaking during the daytime and does not exceed 80 decibels inside the nearest occupied residence in districts zoned R-1A, R-1B, R-2, R-3, or R-4." 20 D.C.M.R. § 2799.1. The protests were taking place in a street area, next to a sidewalk, which was next to a grassy buffer adjacent to a tall, fenced enclosure, on the other side of which was more landscaping before the Israeli Embassy building itself. There is no credible

allegation that District of Columbia noise levels were exceeded, because there is no allegation that the noise inside nearby residences exceeded 80 decibels. It is safe to assume that inside the nearest occupied residence, the noise level was below 80 decibels, and there is no allegation to the contrary. Plaintiff's complaint makes no allegation that Defendants were a noise disturbance and were engaging in anything other than "noncommercial speaking." Further, there's no allegation that Ms. Rokhvand did anything other than organize a protest.

### C. Peaceful Protest Against the Ongoing War Is Not Evidence of Racial, Religious, or Political Bias

Plaintiff has also failed to allege any actionable animosity. Plaintiff has merely pled that he wanted to "pray" in support of Israel amidst pro-Palestinian protestors in the area of the Embassy. There is no indication that any actions were directed to Plaintiff based on his religion or any other protected category.

If making noise, cursing, using megaphones, or waving flags, without any physical contact, constitute tortious acts toward counterprotestors, there would either be a chilling effect on speech at rallies, or the courts would be flooded with claims arising out of protests and counterprotests – or both, depending on the rallygoers. The Amended Complaint contains no allegations of racial slurs, no violence, no disturbance or tearing of flags or signs. This was a peaceful protest motivated by a desire for a ceasefire in the war, not religious hatred.

In Claiborne Hardware, supra, white merchants filed suit against the NAACP and other boycott participants for "force, violence, or threats" against the merchants and alleging that the "management" of the boycott could be held liable. Claiborne Hardware Co., 458 U.S. at 916. The Supreme Court held that "the boycott clearly involved constitutionally protected activity" and that "[t]he fact that such activity is constitutionally protected…imposes a special obligation on this Court to examine critically the basis on which liability was imposed." Id. at 911, 915 (emphasis

added). Unlike this case, <u>Claiborne Hardware</u> was a case with alleged coercion, intimidation and even alleged calls for violence. <u>Id</u>. at 916. The Court nonetheless held that the boycott was lawful protest protected by the First Amendment and that boycott participants could not be held liable for losses resulting from the boycott. <u>Id</u>. at 934.

Similarly, the manager of a protest cannot be held liable for actions connected to a protest simply for managing the protest. And here, there was no violence or threat of violence. Drowning out Plaintiff's video is not violence, any more than Plaintiff was violent when he blasted his horn at a rally in 2018. Even so, Defendants cannot be held liable for activity protected by the First Amendment, especially Ms. Rokhvand, given she was not even present at the protest.

To the extent Plaintiff were to try to refocus Count IV as one for discrimination based on political affiliation, any such claim also fails, as non-religious political affiliation is defined as a "connection with a political party…or a larger organization," none of which is alleged in the Amended Complaint. <u>See</u> <u>Smith v. Trump</u>, 2023 U.S. Dist. LEXIS 13602 *26-27 (D.D.C. 2023). Without actionable animus, Plaintiff's claim must be dismissed.

If anything, Plaintiff's equation of antiwar protestors with Hamas reflects his own bias and is potentially defamatory

## VI. THE CIVIL CONSPIRACY COUNT IS FACTUALLY AND LEGALLY INSUFFICIENT FOR MULTIPLE REASONS, ANY ONE OF WHICH PRECLUDES THE COUNT

The conspiracy claim is defective on multiple grounds, preliminarily because conspiracy to engage in a protest, as alleged, is not actionable. <u>See</u> Am. Compl. ¶¶46-47.

### A. Plaintiff Pleads Himself Out of Civil Conspiracy

Civil conspiracy requires an agreement to participate in an unlawful act or a lawful act in an unlawful manner. <u>Ofisi v. BNP Paribas, S.A.</u>, 77 F.4th 667, 671 (D.C. Cir. 2023). First, there

is no allegation that Defendants agreed to unlawful acts. The allegations consist of protesting with noise and sound amplification. In particular, the conspiracy alleged in the Amended Complaint is that the two Defendants had an "understanding, agreement, or common scheme regarding the conduct and activities of the Protestors," including "noise demonstrations, speaking into megaphones, a sound system, and noise machines. Am. Compl. ¶¶46, 47. That is not an actionable conspiracy but an agreement to engage in a lawful protest using means that are lawful and an "indispensable instrument" of protest. Saia, supra, 334 U.S. at 561. Plaintiff alleges no unlawful act or behavior.

**B.  There Are No Allegations That Ms. Rokhvand Did Anything During the Incident, Let Alone Join an Unlawful Conspiracy**

Plaintiff's civil conspiracy claim is a desperate attempt to keep Ms. Rokhvand in the Amended Complaint without any good faith basis to silence her collateral antiwar protesting. Ms. Rokhvand did not participate in the protest at issue, nor was she even present. Plaintiff only withdrew such false allegations against her in multiple counts after being served with a Rule 11 motion seeking sanctions based on Ms. Rokhvand not being present.

**C.  Other Independent Grounds Preclude a Conspiracy Count**

There is no underlying tort that supports a conspiracy count. Without an "underlying tortious act" that is "independently actionable," which is the object of the conspiracy, there can be no claim for civil conspiracy. Id. at 672. But here there was no tortious injury to Plaintiff. Even if there were an unlawful conspiracy, and even if there were some underlying tort, Plaintiff's claimed injury did not necessarily follow from the agreement to protest as a matter of law. C.f. District of Columbia v. Proud Boys Int'l, LLC, 2023 U.S. Dist. LEXIS 57433 *20 (D.D.C. 2023) (holding that January 6 protestors marching to the Capitol seeking to overthrow election results necessarily had to assault police officers to effectuate their scheme, leading to potential conspiracy to commit

assault and battery). Plaintiff was not some random passerby that the protestors ran over while committing a wrongful act; he sought out the protestors, walked among them, and berated them verbally. Also, the conspiracy allegations are so vague that even reading the Amended Complaint favorably to Plaintiff, it is not clear that the two Defendants specifically agreed to anything at all in advance. See Am. Compl. ¶¶46-47.

Defendants and others protested the killing of civilians in Gaza and called for a ceasefire. They consider themselves peace activists. They had Palestinian flags, anti-Israeli signs relating to what the protestors considered genocide and used sound amplification equipment to make their views heard. There was no conspiracy to harm Plaintiff, whom Defendants did not know, or anyone else, and nor is such a conspiracy alleged. Defendants had no knowledge of Plaintiff until he began his counterprotest. Further, in Kurd v. Republic of Turkey, 374 F. Supp. 3d 37 (D.D.C. 2019), cited by Plaintiff in prior briefing, the Court held that certain defendants could be liable for assault and battery where they physically assaulted protestors, but they could not be liable for conspiracy without notice, because there was no agreement in advance to attack protestors who showed up at the Turkish Embassy and were assaulted.

### D. Allowing a Conspiracy Count for Organizing and Undertaking a Protest as Alleged Would Have Adverse Implications for the Rights of All Americans

All allegations are of lawful acts done in a lawful manner. For the alleged conspiracy, Defendants are alleged, at most, to have organized a protest wherein there were megaphones and a sound system. Am. Compl. ¶¶46-47. There are no facts supporting allegations that there was an unlawful conspiracy or a plan to perform anything other than lawful protest. Allowing civil conspiracy on the basis alleged would allow for civil conspiracy claims against every protestor that ever had a hand in organizing protests. Such a ruling would be unprecedented and act as a heavy blanket suppressing the right to free speech and assembly of all Americans.

Even if there were an agreement to protest, no one knew Plaintiff was coming, and Defendants could not have conspired to harm him. Plaintiff has not alleged an agreement for any unlawful purpose, not any underlying actionable tort. The allegations are also conclusory at best. Those multiple independent reasons necessarily preclude the conspiracy count.

## **CONCLUSION**

There is no cause of action under any of the tort counts pled. There was no physical touching or threatened touching, and thus no assault or battery. There was no outrageous behavior and no severe emotional distress and thus no intentional infliction of emotional distress. There were differing points of view that day, with protestors decrying what they view as unjustified killings and even genocide, while Plaintiff was praying for Israeli soldiers and hostages, but there was no hate crime.

Plaintiff apparently considers the Defendants views and advocacy offensive and wrong to such an extent that he called them wicked people. But the First Amendment is meaningless unless it protects unpopular views that other persons may regard as offensive.

WHEREFORE, Defendants pray that this Court dismiss Plaintiff's Amended Complaint with prejudice for lack of subject matter jurisdiction and for failure to state a claim, and award such other relief as the Court deems proper.

## **REQUEST FOR ORAL ARGUMENT**

Defendants respectfully request oral argument on the foregoing motion.

Respectfully submitted,

Hazami Barmada and
Atefeh Rokhvand
By Counsel

/s/  George R. A. Doumar
George R. A. Doumar, DC Bar #415446
Daniel R. Hernandez, Of Counsel
Doumar Martin PLLC
1530 Wilson Blvd, Suite 1060
Arlington, VA 22209
Tel: 703-352-1300
gdoumar@doumarmartin.com
dhernandez@doumarmartin.com


/s/  Sam W. Burgan
Sam W. Burgan, DC Bar # 405478
Burgan & Associates, P.C.
Rock Spring Professional Center
5673 Columbia Pike, Suite 201
Falls Church, Virginia 22041-2869
Tel (703) 575 8810
Fax (703) 575 8054
sburgan@BurganLaw.com

Of Counsel:

Asim Humayun, Esquire
Mohammadi & Humayun, LLC
200 A Monroe St Suite 215,
Rockville, MD 20850
301 800-0880
ah@mhlegalteam.com
*Pro Hac Vice to Be Filed*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the attached document was served via electronic mail, through the ECF system, on October 1, 2024, upon all counsel of record.

/s/  George R. A. Doumar
George R. A. Doumar, DC Bar #415446
Daniel R. Hernandez, Of Counsel
Doumar Martin PLLC
1530 Wilson Blvd, Suite 1060
Arlington, VA 22209
Tel: 703-243-3737
gdoumar@doumarmartin.com
dhernandez@doumarmartin.com